# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE THE APPLICATION OF | ) | |
| | ) | |
| ROY V. CRANE, | ) | |
| | ) | |
|     Plaintiff/Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-849-D |
| | ) | |
| MONIKA G. MERRIMAN, | ) | |
| | ) | |
|     Defendant/Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff/Petitioner Roy V. Crane's ("Crane") Verified Complaint and Petition for Return of the Children [Doc. No. 1] pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention") as implemented by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001 *et seq*. Defendant/Respondent Monika G. Merriman ("Merriman") timely filed an Answer to the Verified Complaint [Doc. No. 8] and subsequently filed a Trial Brief [Doc. No. 14]. On September 8, 2017, the Court granted Crane's Motion for Temporary Restraining Order [Doc. No. 10], which prohibited Merriman from removing the couple's minor children from this district until a determination could be made as to the appropriateness of any further injunctive relief and the merits of the Petition

[Doc. No. 13]. On September 12, 2017, the Court held an evidentiary hearing on the matter.

Based on the facts shown by the Verified Complaint, testimony of both parties, evidence and argument received at the hearing, and the case record, the Court finds that the Petition must be **GRANTED**, and the children returned to New Zealand for the reasons set forth below.

As an initial matter, the Court finds it has subject matter jurisdiction over the claims at issue. *See* 22 U.S.C. § 9003(a) ("The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention."); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the … treaties of the United States."); *West v. Dobrev*, 735 F.3d 921, 924 (10th Cir. 2013) ("ICARA provides federal district courts with original jurisdiction (concurrently with state courts) over petitions seeking the return of children under the Hague Convention."). Moreover, the Court finds it has personal jurisdiction over Merriman, who resides in this district and was served with copies of the Verified Complaint, the Court's Order granting Crane's Motion for Temporary Restraining Order, and other pertinent papers. Merriman was given appropriate notice of the hearing and afforded the opportunity to be fully heard. *See* Order, Sept. 8, 2017 at 3 [Doc. No. 13].

The Hague Convention "creates an international legal mechanism requiring contracting states to promptly return children who have been wrongfully removed to, or wrongfully retained in, their jurisdiction, without deciding anew the issue of custody." *Navani v. Shahani*, 496 F.3d 1121, 1124 (10th Cir. 2007) (citation omitted). ICARA states that "[c]hildren who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4). "[T]he Convention seeks 'to prevent parents from abducting children in order to avoid the jurisdiction of courts with whose [custody] rulings they do not or believe they will not agree.'" *West*, 735 F.3d at 929 (quoting *Shealy v. Shealy*, 295 F.3d 1117, 1121 (10th Cir. 2002)). Stated another way, "[t]he principal aims of the Convention are to 'prevent an international version of forum-shopping,' 'defeat attempts to re-litigate custody matters,' and 'facilitate custody adjudications, promptly and exclusively' in the child's country of residence[.]" *See id.* (citing *Navani*, 496 F.3d at 1128-29; *Chafin v. Chafin*, 568 U.S. 165, 180 (2013)).

As indicated above, in addressing actions brought under the Convention, the Court is not authorized to address the merits of an underlying custody claim. *See* 22 U.S.C. § 9001(b)(4)("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.").

To establish a prima facie case of wrongful retention, Crane must establish: (1) the children habitually resided in New Zealand at the time of the retention; (2) the retention breached his custody rights under the law of New Zealand, and (3) Crane was exercising those rights at the time of retention. *West*, 735 F.3d at 929; *In re Application of Stead v. Menduno*, 77 F. Supp. 3d 1029, 1033 (D. Colo. 2014). Crane has the burden to prove the children have been wrongfully retained within the meaning of the Convention by a preponderance of the evidence. *See id.* (citing 22 U.S.C. § 9003(e)(1)(A)). To establish something by a "preponderance of the evidence" means that the evidence, considered in light of all the facts, proves that something is more likely so than not. *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n. 9 (1997).

## BACKGROUND

The parties lived together in Auckland, New Zealand, in a domestic partnership which produced two children, A.E.C. who was born in August 2013, and R.F.A.C., who was born in September 2016. The children's birth certificates, introduced into evidence as Plaintiff's Exhibits 2 and 3, reflect both of the parties as the birth parents. Both children are dual citizens of New Zealand and the United States.[1] In April 2016, the parties decided to end their domestic partnership, but continued to live together as they dealt with issues involved in the dissolution of

---

[1] The children have New Zealand and United States passports.

their relationship. Ultimately, and as discussed more *infra*, the parties agreed that Merriman would depart New Zealand with the children after Christmas 2016. Until her departure with both children on December 28, 2016, Merriman had resided in New Zealand for about fifteen years. In August or September 2016, Merriman applied for New Zealand citizenship, but did not complete the process before she departed for the United States.

The children resided with both parents in New Zealand following their births. The oldest, A.E.C., was three years old when she left for the United States with Merriman; the youngest, R.F.A.C., was a little over two months old. Between April 2016 and December 2016, the parties agreed to, and executed, an agreement for property division and an agreement regarding the custody and care of the children. The Custody and Access Agreement ("Custody Agreement" or "Agreement"), entered into evidence as Plaintiff's Exhibit 4, was executed in November of 2016.[2] At the time of the execution of the Agreement, the parties intended that it would control matters of custody, visitation and support of the children. The Custody Agreement makes clear that the parties would continue to be joint guardians of the children (¶ 1.2) and share custody (¶ 4.1). The Custody Agreement provides that Merriman would "initially" have "primary care" of the children (¶ 4.2), subject to a

---

[2]The Custody Agreement is undated, but neither party contests that it was duly executed, and there is no reason to doubt the allegation in the Petition that it was executed on November 29, 2016.

specific plan for visitation by Crane during the period of 2017-2020 (¶ 4.4), as well as alternating residences over Christmas, with Christmas 2017 to be spent in New Zealand (¶ 4.6). Further, after each child reaches the age of six, respectively, the Custody Agreement provides for a "50/50 split of care," with six months in the United States with Merriman, and six months in New Zealand with Crane (¶ 5.1). The Custody Agreement further states that "no attempt will be made to overturn this agreement in the United States," (¶ 5.2) and provides that any review of the Agreement will be subject to "New Zealand law and jurisdiction." (¶ 5.3).

The Custody Agreement includes a provision reflecting Crane's consent to the children relocating to the United States with Merriman (¶ 4.3), this provision appearing immediately after the provision stating that Merriman will "initially have primary care of the children …." (¶ 4.2).

Crane testified that he would not have consented to the removal of the children from New Zealand without the execution of the Custody Agreement, and such consent was based on, and subject to, the other provisions of the Agreement. Merriman acknowledged in testimony that Crane would not have consented to the children going to the United States absent the Custody Agreement. This testimony from both parties was corroborated by other evidence, including Plaintiff's Exhibits 5 and 6.

The parties' Custody Agreement further provides for visitation by Crane in New Zealand for two months in 2017, and that such visit to New Zealand will take place "as agreed in the period from the end of May to the end of August … or as mutually agreed by both parties." (¶ 4.4). This requirement is reflected by the conduct of the parties at the time Merriman departed New Zealand with the children: return airfare was booked and paid for with an arrival back in Auckland, New Zealand on May 2, 2017. *See* Plaintiff's Exhibit 8.

In mid-April 2017, Merriman asked Crane to agree to delay the planned visitation until July, to which he assented. The purpose of the delay was to accommodate Merriman's job search in Oklahoma. *See* Plaintiff's Exhibit 10. Merriman changed the previously booked flights to allow for a July 6, 2017 arrival of her and the children in New Zealand. However, on June 29, 2017, Merriman caused to be filed in the District Court of Oklahoma County a Petition for Paternity, Custody, Visitation and Child Support, seeking sole custody of the children. *See* Plaintiff's Exhibit 14. Merriman did not return with the children as previously agreed, and had Crane served with the Oklahoma state court Petition in early July 2017.

During testimony, Merriman stated various reasons for deciding not to return the children to New Zealand for the visitation required by the Custody Agreement and for filing the Oklahoma state court Petition. She stated that she could not

financially afford to return with the children; that she could not be absent from her position as a high school teacher for the two months required by the Custody Agreement; that she wished to work out a more reasonable custody arrangement with Crane; and that she feared that if she returned to New Zealand without a court order regarding the children from an Oklahoma court, Crane would be able to take her to court in New Zealand and prevent her return to Oklahoma with the children for several months. Merriman also seemed to assert that filing the Oklahoma state court Petition was an attempt to *comply* with the Custody Agreement's provision at ¶ 5.2 which states that the agreement was to be "filed and recognized as the primary agreement in a United States Court and confirmed as accepted under U.S. law." All of the reasons cited by Merriman for her actions are belied by the evidence.

For instance, Merriman's assertion of financial difficulty in abiding by the Agreement is undercut by the fact that the return airfare for her and the children was paid before her initial departure from New Zealand in December 2016. Moreover, she was able to purchase a new home in Oklahoma, and received a $3,000 gift from her father to assist her in doing so.³ Merriman also testified about another $3,000 gift from her father to help finance the filing of the Oklahoma state court Petition.

---

³The evidence also established that Crane assisted Merriman in the purchase of the home by advancing $7,000 in connection with their property division agreement.

Further, Merriman has obtained full time employment in Oklahoma as a teacher.[4] Merriman's desire to obtain a court order in Oklahoma regarding custody of the children before returning them to New Zealand illuminates an underlying intent to avoid the parties' New Zealand Custody Agreement, and is precisely the type of conduct the Hague Convention and ICARA seeks to prevent. *See Navani v. Shahani*, 496 F.3d 1121, 1128 (10th Cir. 2007) ("As we and our sister circuits have repeatedly explained, the Hague Convention attempts to prevent an international version of forum shopping, wherein a parent dissatisfied with current custodial arrangements flees with the child to another country to re-litigate the merits of custody and to obtain a more favorable custody order.") (citations omitted). And, the notion that Merriman's assertion of the Oklahoma state court Petition was an attempt to comply with the Custody Agreement is absurd – the state court Petition seeks to nullify much of what the New Zealand Custody Agreement established.

With the foregoing recitation of the underlying facts, as established by the record and evidence submitted at the hearing, the Court turns to the elements required by the Hague Convention as implemented by ICARA.

---

[4]Sadly, teaching is not a high-paying profession in Oklahoma, but Merriman testified her salary is enough to cover her mortgage and other expense obligations, and the time off for school breaks and vacations corresponds with the near-term visitation schedule set forth in the Custody Agreement.

## DISCUSSION

Stated *supra*, to establish a prima facie case of wrongful retention, Crane must establish by a preponderance of the evidence that (1) the children habitually resided in New Zealand at the time of the retention; (2) the retention breached his custody rights under the law of New Zealand, and (3) Crane was exercising those rights at the time of retention. *West*, 735 F.3d at 929.

**I.  Habitual Residence**

The term "habitual residence" is not defined in the Convention or ICARA. *Stead*, 77 F. Supp. 3d at 1034 (citing *Holder v. Holder*, 392 F.3d 1009, 1015 (9th Cir. 2004)). Courts in this circuit, adopting the approach implemented by the First, Fourth, and Fifth Circuits, have stated that "[i]n determining a child's habitual residence, [the court] looks first to the shared intent or settled purpose of the persons entitled to determine the child's permanent home; as a secondary factor, [it] may consider the child's acclimatization to his or her current place of residence." *Mertens v. Kleinsorge-Mertens*, 157 F. Supp. 3d 1092, 1103 (D.N.M. 2015) (citing *Mendez v. May*, 778 F.3d 337, 344 (1st Cir. 2015); *Smedley v. Smedley*, 772 F.3d 184, 186 (2d Cir. 2014); *Berezowsky v. Ojeda*, 765 F.3d 456, 466 (5th Cir. 2014)).[5]

---

[5]"Courts have widely recognized that the term should therefore be interpreted according to the ordinary and natural meaning of the two words it contains, as ... decided by reference to all the circumstances of any particular case." *Stead*, 77 F. Supp. 3d at 1034 (quoting *Guzzo v. Cristofano*, 719 F.3d 100, 106 (2d Cir. 2013) (paraphrasing in original)). Thus, "habitual residence" must be determined in every

This approach is consistent with a prior unpublished decision from the Tenth Circuit, which states: "[a]lthough it is the child's habitual residence that the court must determine, in the case of a young child the conduct, intentions, and agreements of the parents during the time preceding the [retention] are important factors to be considered." *Kanth v. Kanth*, No. 99-4246, 2000 WL 1644099, at *1 (10th Cir. Nov. 2, 2000) (unpublished) (citing *Feder v. Evans-Feder*, 63 F.3d 217, 223 (3d Cir. 1995); *Pesin v. Osorio Rodriguez*, 77 F. Supp. 2d 1277, 1285 (S.D. Fla. 1999)).[6]

The Court finds that, prior to their retention in the United States, the children habitually resided in Auckland, New Zealand. It is undisputed that, at birth, both children resided with the parties in New Zealand. It is also undisputed that A.E.C.

---

case "by examining specific facts and circumstances" and "should not [be] interpret[ed] technically or restrictively." *Mertens*, 157 F. Supp. 3d at 1103 (quoting *Avendano v. Smith*, 806 F. Supp. 2d 1149, 1164 (D.N.M. 2011)).

[6]In this regard, sister courts have specifically cautioned that "shared intentions should be the primary focus in the habitual residence inquiry" particularly when the minor is of a young age. *Larbie v. Larbie*, 690 F.3d 295, 311 (5th Cir. 2012). This is because "[t]o focus on a young child's experience encourages 'future [parties] to seek unilateral custody over a child in another country' or to delay returning to the child's original habitual residence as long as possible." *See id*. (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1079 (9th Cir. 2001)). In essence, "[t]he greater the ease with which habitual residence may be shifted without the consent of both parents, the greater the incentive to try." *Mozes*, 239 F.3d at 1079. The Sixth Circuit recently cited *Kanth* in support of its statement that, with respect to "especially young children," "[e]very circuit to have determined whether a country constituted a habitual residence considers both the acclimatization and shared parental intent standards." *Ahmed v. Ahmed*, 867 F.3d 682 (6th Cir. 2017).

11

resided with the parties for over three years in New Zealand; R.F.A.C. was a little more than two months old when he departed New Zealand with Merriman. The children have New Zealand and United States citizenship. Although it is true that the children have now been in Oklahoma for nine months, had Merriman abided by the Custody Agreement, two out of the nine months would have been spent in New Zealand. Moreover, it is a stretch to contend, as Merriman does, that the Custody Agreement reflects a mutual intent to *permanently* relocate the children to Oklahoma, and thus establish Oklahoma as the place where they habitually reside as those terms are used in the Convention. A more consistent and sensical reading of the Custody Agreement is that it seeks to *preserve* the children's ties to New Zealand, in that it acknowledges the children's strong ties to that country, and establishes a 50/50 residential regime as between Oklahoma and New Zealand for each child beginning at age six – two years from now for A.E.C. In any event, the Court finds that, absent an expression of mutual intent to establish Oklahoma as their new permanent residence, presence here for nine months, under the circumstances of this case, is insufficient to support a finding that the children have acclimatized here and habitually reside in Oklahoma as opposed to New Zealand. Thus, the Court finds that Crane has established the first element of his prima facie case by a preponderance of the evidence.

## II. Breach of Custodial Rights

Under this factor, the Court finds the retention of the children in Oklahoma by Merriman breached Crane's custody rights under the law of New Zealand and the Custody Agreement and, thus, was wrongful. Under New Zealand law, the parties are joint guardians of the children. *See* Verified Compl. at Ex. 5 (attaching excerpts from the New Zealand Care of Children Act ("CCA") §§ 15-18). The Custody Agreement, similarly, provides at ¶ 1.2 that Crane and Merriman "shall continue to be joint guardians" of the children. As such, Crane has the right, *inter alia*, to "determine[] for or with the child, or help[] the child to determine, questions about important matters affecting the child." "Important matters" include, but are not limited to, changes in the child's place of residence that may affect the child's relationship with his or her parents and guardians; where and how the child is to be educated; and the child's culture, language, and religious denomination and practice. Verified Compl. at Ex. 5 (citing CCA § 16). The legitimacy of the negotiation and execution of the Custody Agreement was not challenged by Merriman, nor has there been a challenge to its efficacy under New Zealand law.

Merriman argued at the hearing that, although visitation did not occur as required by the Custody Agreement, visitation could technically still be accomplished during 2017 upon agreement of the parties. However, Merriman admitted in testimony that, because of her employment, she is not in a position to

abide by the terms of the Agreement this year. Moreover, her filing of the Oklahoma state court Petition, seeking relief directly contrary to the custody and visitation provisions of the Agreement, indicates an intent not to abide by the Custody Agreement. Therefore, the Court finds that Crane has established the second element of his prima facie case – wrongful retention of the children in Oklahoma in violation of his custodial rights.

## III.  Exercise of Custodial Rights

Finally, the evidence clearly shows Crane was exercising his joint guardian rights – within the parameters of the Custody Agreement – at the time of the wrongful retention. Therefore, the Court finds by a preponderance of the evidence that Crane has established his prima facie case under the Hague Convention and ICARA.

## IV.  Affirmative Defenses

Upon Crane's showing of a prima facie case, return of the children is required unless Merriman can establish one of the four exceptions, or defenses, as set forth in the Hague Convention. Two of these defenses can be established by a preponderance of the evidence: (1) the proceeding was commenced more than one year after the removal of the children and the children have become settled in their new environment (Hague Convention, Art. 12) or (2) the person seeking return of the children either consented to or subsequently acquiesced in the retention (Hague

Convention, Art. 13). The other two defenses must be shown by clear and convincing evidence: (1) there is a grave risk that the return of the child would expose it to physical or psychological harm (Hague Convention, Art. 13b) or (2) the return of the child would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms (Hague Convention, Art. 20). *See* 22 U.S.C. § 9003(e).

"All four of these exceptions are 'narrow.' They are not a basis for avoiding return of a child merely because an American court believes it can better or more quickly resolve a dispute. In fact, a federal court retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention." *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996) (internal citations omitted).

The only recognized defense advanced by Merriman is that Crane consented to the relocation of the children in ¶ 4.3 of the Custody Agreement, and otherwise acquiesced in the relocation by agreeing to delay the visitation called for in the Agreement and assisting Defendant in the purchase of her home in Oklahoma. Merriman's contentions are unavailing. It is curious that Merriman points to ¶ 4.3 of the Custody Agreement in an attempt to establish her defense, when she has failed to abide by the requirements of the Agreement and has repudiated it by filing the

15

Oklahoma state court Petition. In any event, she has failed to establish the defense by a preponderance of the evidence.

The evidence is clear that Crane's agreement to include relocation of the children to Oklahoma in the Custody Agreement was made in the context of the Agreement as a whole, which provides for extensive involvement and visitation by Crane until the children reach the age of six, and then requires a 50/50 residential split between New Zealand and Oklahoma. Indeed, Merriman admitted during testimony that Crane would not have consented to the children going to Oklahoma but for the New Zealand Custody Agreement. Although Merriman argues that the parties agreed to a permanent relocation of the children to Oklahoma, the Custody Agreement itself belies that assertion.

Having found that Merriman failed to establish a defense by a preponderance of the evidence, return of the children to New Zealand is required by the Hague Convention and ICARA.

**IT IS THEREFORE ORDERED** that the Verified Complaint and Petition for Return of the Children [Doc. No. 1] is **GRANTED**. The Court directs that A.E.C. and R.F.A.C. be returned to New Zealand forthwith and placed in the physical custody of Plaintiff/Petitioner pending further order, as appropriate, of a New Zealand court or other disposition of the underlying custody issues.

**IT IS FURTHER ORDERED** that Defendant/Respondent, anyone acting in concert with her, and any other person with actual knowledge of this Order are restrained from taking any action that interferes with or impedes the timely effectuation of the directions of this Order.

A judgment shall be issued forthwith.

**IT IS SO ORDERED** this 14th day of September 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE